IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ROBERTA L. HINES** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No. SAG-22-1243 |
| v. | * | |
| | * | |
| **MAYOR AND CITY COUNCIL OF BALTIMORE,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Roberta L. Hines ("Plaintiff") brings this action against her former employer, the Mayor and City Council of Baltimore ("the City"), alleging discrimination and retaliation on the basis of sex and disability. ECF 50. The City filed a motion for summary judgment, ECF 88, which Plaintiff opposed, ECF 96. The City then filed a reply, ECF 102, and Plaintiff filed a motion for leave to file a surreply, ECF 103, 105. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Plaintiff's motion for leave to file a surreply, ECF 105, will be GRANTED and the surreply at ECF 105-1 will be docketed. The City's motion for summary judgment is GRANTED, and judgment will be entered in favor of the City.

I. **BACKGROUND**

The facts contained herein are viewed in the light most favorable to Plaintiff, the nonmoving party. Plaintiff began working for the Baltimore City Office of Information Technology ("BCIT") in March 2017 as a secretary. ECF 96-1 at 2. In or around February 2018, Plaintiff applied for and was promoted to an internal IT Project Manager ("PM") after completing

her master's degree in project management. *Id*. Plaintiff worked as a PM from February 2018 until she was terminated in May 2022. *Id*. As a PM, Plaintiff's duties included working closely with the data office to provide project management for data projects; creating reports, project schedules, and applications; data entry; and typing. ECF 88-3 at 2-3; 88-4 at 2.

In September 2018, about seven months after she started at BCIT, Plaintiff's interim manager, Eric Wildberger, placed her on a ninety-day Performance Improvement Plan ("PIP"), which began September 11, 2018, and was scheduled to end on December 10, 2019. ECF 96-1 at 20-21; ECF 88-5 at 1. Among other failures in performance, the 2018 PIP indicated that Plaintiff had "demonstrated a pattern of late submissions," neglected to complete assigned tasks, declined to meet with Mr. Wildberger to discuss her progress and training, cancelled and rescheduled meetings without notice to customers, and spoken rudely to staff members. ECF 88-5 at 2-5. The PIP detailed expectations for her improved performance in these and other areas and indicated that as of October 4, 2018, Plaintiff had made "[s]ome progress" but "not all expected performance [had] been met," and Plaintiff had a "tone and attitude." *Id*. at 2, 4. On November 19, 2018, Plaintiff received noticed that the PIP would be terminated prior to the end of the ninety-day period "[b]ased on the feedback from your current supervisor [that] your performance does not rise to the level of progressing to disciplinary action." ECF 88-6; *see also* ECF 96-1 at 21. In December 2018, management changed, and Plaintiff no longer reported to Mr. Wildberger. *See* ECF 88-6.

For the review period between June 30, 2018 and June 15, 2019, Plaintiff's new manager, LaShawn Lawrence, gave her an overall rating of 3, indicating "Meets Expectations." ECF 96-3 at 8. Lawrence commented that Plaintiff "demonstrated a good understanding of how to execute projects" and "worked hard to cultivate relationships," but noted that she "would like [Plaintiff] to develop a deeper understanding of project outputs," and "improve communication to stakeholders

and customers" through implemented methods like "project status meetings" and "status reports." *Id*. at 2, 4.

Plaintiff alleged that the Chief Information Officer, Todd Carter, harassed her in 2019 and 2020. ECF 50 at 5-6.[1] In or around January 2020, Plaintiff began working under Michael Wisniewski, who served as Chief Data Officer at BCIT and supervised Plaintiff for almost two years. ECF 96-4 at 1[2]; ECF 96-1 at 19. In or around October 2020, Mr. Wisniewski completed Plaintiff's annual performance evaluation and rated her overall performance as "Meets Expectations." ECF 96-5 at 3. He noted that Plaintiff was "service-oriented and customer focussed [sic]." *Id*. at 2.

---

[1] In June 2020, Plaintiff brought a separate lawsuit claiming violations of the Equal Pay Act and a hostile work environment in violation of Title VII. Civ. No. SAG-20-1808. This Court granted the City's motion for summary judgment as to all claims. No. SAG-20-1808, ECF 50, 51.

[2] In its reply in support of its motion, the City argues that Mr. Wisniewski's affidavit, ECF 96-4, should be stricken because it is "riddled with third party statements and conclusions about the intentions of other individuals" and "includes conversations, thought processes, and conclusions[] of supervisors who are not parties to this claim." ECF 102 at 14. Courts have long held that while "the *form* of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, the *content* or *substance* of that evidence must be admissible." *Johnson v. Welden Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (emphasis in original, citation omitted); *see also Evans v. Techs. Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996). While Rule 56 of the Federal Rules of Civil Procedure permits parties at summary judgment to produce evidence through an affidavit, it does not provide license to relax the standards of the Federal Rules of Evidence as to the content and substance of that evidence. *Id*. In other words, hearsay testimony that would be inadmissible at trial does not somehow become admissible simply by appearing in an affidavit opposing summary judgment. *Id*.; *see also* Fed. R. Civ. P. 56(c)(4) (summary judgment affidavit should "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant…is competent to testify on the matters stated"); 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2738 (4th ed. June 2024 Update) ("the rules of evidence and their exceptions determine what allegations the affidavit may contain"). Thus, to the extent Mr. Wisniewski's affidavit contains content and substance that would not be admissible at trial, it is "beyond the bounds of the court's consideration" and is disregarded. *Johnson*, 594 F.3d at 1210; *see also Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1016 (N.D. Ind. 2009).

In December 2020, Plaintiff underwent hand surgery and took six-weeks of medical leave. ECF 88-3 at 6; ECF 96-2 at 3. When she returned in January 2021, Plaintiff requested and received reasonable accommodation of breaks for twenty minutes twice per day (later increased to every three hours), and her expected typing speed was decreased to 25 words per minute. ECF 88-3 at 6; ECF 96-2 at 3; ECF 98-1 (sealed) at 3; ECF 98-2 (sealed).

Plaintiff had two additional supervisors prior to her termination, Robert McBride and Andrew Vaught. ECF 50 at 5. Both supervisors found deficiencies in Plaintiff's work, including attendance issues, failure to meet deadlines, failure to complete projects, inability to constructively resolve conflicts, lack of flexibility, and failure to actively engage in projects. ECF 88-7, 88-8. Plaintiff alleges that Mr. McBride "piled additional projects on her" and "purposely increased [her] workload" by giving her work from male PMs. ECF 96 at 10; ECF 50 at 6; ECF 96-1 at 3-5, 7-8; ECF 88-3 at 9, 11. Plaintiff informed her supervisors that she could not meet deadlines, could not take necessary breaks for her hand, and needed to put her work "on hold." ECF 88-3 at 11-14. After Plaintiff appealed her February 2021 evaluation, in which Mr. McBride gave her an overall rating of "Improvement Needed," ECF 88-7 at 3, ECF 96-1 at 11, her revised evaluation noted that her "work was adjusted to accommodate her request" but an overdue project "continue[d] to linger and run over." ECF 96-8 at 4; ECF 96-1 at 11-12.

Plaintiff filed charges of discrimination with the Maryland Commission on Civil Rights and the U.S. Equal Employment Opportunity Commission ("EEOC") on July 7, 2021 alleging sex discrimination, disability discrimination, and retaliation. ECF 50-1. The sole disability alleged in that paperwork was related to Plaintiff's hand. *Id*. at 2. The City did not respond to the charges. ECF 50 at 7. Plaintiff received notice of a right to sue from the EEOC in February 2022. ECF 50-1.

In October 2021, Plaintiff filed a complaint against Mr. McBride with human resources, alleging "continuous biased and disrespectful behaviors, including deliberate acts which caused a disruption in my work." ECF 96-10 at 4-5; *see also* ECF 96-1 at 15-16; ECF 50 at 7-8. In or around November 2021, Mr. Vaught replaced Mr. McBride as Plaintiff's supervisor. ECF 96-2 at 5.

In February 2022, Mr. Vaught placed Plaintiff on a PIP beginning February 16, 2022 and ending June 30, 2022. ECF 88-9. The PIP indicated that Plaintiff "displayed a consistent pattern of being late or completely missing meetings," not sufficiently making project updates in the necessary project management platform, not being accountable and following through on assigned work, and lacking required problem-solving capabilities. *Id*. Plaintiff attempted to challenge the PIP but was unsuccessful. ECF 50 at 8. On April 8, 2022, while she was on the PIP, Plaintiff received a written warning from Mr. Vaught regarding her failure to complete assigned tasks. ECF 96-1 at 17-18; ECF 96-2 at 6; ECF 50 at 8. On April 18, 2022, Plaintiff filed a grievance concerning the warning, a grievance hearing was held on August 11, 2022 (after Plaintiff's termination), and her grievance was ultimately denied. ECF 96 at 15-16; ECF 96-2 at 7; ECF 50 at 8.

In April 2022, midway through her PIP, Plaintiff began discussions with Mr. Vaught and human resources to modify her workload "due to her hand and generalized anxiety disorder." ECF 96 at 16; ECF 88-14. Specifically, Plaintiff stated she was "overwhelmed" and requested "to be removed from the GIS unit effective immediately." ECF 88-14 at. Around April 26, 2022, Plaintiff made a formal reasonable accommodation request related to her anxiety and work-related chronic stress, which listed the following requested accommodations: "[f]ostering a civil work environment that offers open and meaningful communication, support, fairness, and respect;" "[c]hange supervisor or supervisory methods;" "[p]rovide flexible schedule;" and "[c]onstruct work assignment schedules that lessen the stress of being overwhelmed." ECF 96-1 at 16; ECF

5

96-2 at 7; ECF 98-3 (sealed) at 8, 11; ECF 88-14. On April 26, 2022, the City placed her on paid administrative leave to allow Plaintiff time to provide necessary documents and information and to allow the City to review the "requested accommodations to change supervisor and/or modify work assignment." ECF 88-15. On May 17, 2022, the City determined that it was unable to accommodate Plaintiff's request due to "the undue hardship these accommodations would present." ECF 88-15. On the same day, the City notified Plaintiff that her employment was officially terminated effective May 18, 2022. ECF 88-16.

Plaintiff filed this action in May 2022, contending she had been subjected to sexual harassment, discrimination on the basis of sex and disability, and retaliation. ECF 1. Plaintiff, who was initially self-represented, filed several amendments to her complaint, most recently a third amended complaint ("TAC") in February 2023, ECF 50, following the Court's authorization of such filing, *see* ECF No. 49. The City moved to dismiss the TAC, and the Court granted the motion with respect to Plaintiff's hostile work environment claim but permitted her claims for sex discrimination, disability discrimination, and retaliation to proceed. ECF 56 & 57. The City filed a motion for summary judgment on March 19, 2024. ECF 88. After the Court granted Plaintiff a 45-day extension on her response deadline, ECF 94, Plaintiff filed her opposition on June 3, 2024, ECF 96. Counsel for Plaintiff entered her appearance in this matter on the same day, ECF 95. The City filed a reply on July 10, 2024, ECF 102, and Plaintiff filed a motion for leave to file a surreply on July 19, 2024, ECF 103, which was originally denied because the motion failed to attach a proposed surreply, ECF 104. Plaintiff then filed a motion requesting reconsideration of her motion for leave to file a surreply, ECF 105, and attached the proposed surreply, ECF 105-1.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id*. The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id*. at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id*. at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id*. at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment is also warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id*. at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id*. at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id*. at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a

7

motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. DISCUSSION

The City moves for summary judgment on all three of Plaintiff's remaining claims: (1) discrimination on the basis of sex; (2) discrimination on the basis of disability; and (3) retaliation. For the reasons that follow, Plaintiff has failed to demonstrate a genuine issue for trial, and the City's motion is granted.

#### A. Sex Discrimination

Plaintiff claims that her supervisors at BCIT treated her differently than her male colleagues in that they denied her PM training, assigned her data entry work suited for an employee below her job description, asked her to support more teams than her male counterparts, purposely overloaded her with work from male counterparts, and gave her poor reviews based on her inability to complete "impossible" tasks. ECF 50 at 5. Plaintiff also claims that she was ultimately terminated due to her gender.

Plaintiff offers no direct evidence of the City's intent to treat its employees differently based on gender or disability. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (defining direct evidence as evidence "of conduct or statements that both reflect directly the alleged discriminatory attitude and…bear directly on the contested employment decision" (citation omitted)). She must therefore employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, she must first establish a prima facie case of discrimination, including evidence (1) that she is a member of a protected class,

(2) that she was meeting her employer's legitimate job expectations, (3) that she suffered an adverse employment action, and (4) that similarly situated employees outside of the protected class were treated differently. *See White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004).

Although Plaintiff is a member of multiple protected classes and has established that she suffered an adverse employment action, her termination, she has failed to establish a genuine issue of material fact as to the other two components of a prima facie case for gender discrimination.

First, Plaintiff has not evidenced that she was performing her job at a level that met the City's legitimate expectations. Importantly, it is "the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (citation omitted). The City provided evidence, in the form of PIPs and performance evaluations, that, beginning in the earliest stages of her tenure, Plaintiff was not performing satisfactorily, refused to take direction from supervisors, failed to meet deadlines and complete projects, and was sometimes rude to customers. ECF 88-5, 88-7, 88-8, 88-9. The record shows that no supervisor ever expressed that Plaintiff's performance exceeded expectations; instead, her annual performance reviews including overall ratings of "Meets Expectations" (with one supervisor noting constructive comments) or "Improvement Needed." ECF 96-3, 96-5, 96-8, 88-7, 88-8. Instead of providing evidence showing that assessment of her performance was inaccurate or that her poor performance was not the real reason for her termination, Plaintiff disputes the merits of the City's evaluations and work assignments. ECF 96 at 22 ("[T]he evidence shows that Plaintiff met performance metrics regarding her *own* projects but not those management piled on her…" (emphasis in original)), 23 ("Plaintiff met *legitimate* performance expectations, not the unlawful discriminatory performance expectations management set…" (emphasis in original)); 24-25 (stating McBride and Vaught's "performance ratings are suspect" and 2018 PIP "is stale

and irrelevant"); *see also Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact"). But Court's role here is not to appraise the City's appraisal but to assess whether the City's proffered reasons for discharging Plaintiff are discriminatory. *Hawkins*, 203 F.3d at 280-81 ("no court sits to arbitrate mere differences of opinion between employees and their supervisors"); *Evans v. Techs. Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."). Plaintiff has not shown that she did meet deadlines, attend meetings, display timeliness, and treat customers respectfully. Instead, she simply suggests that her employer was expecting too much. Thus, the uncontroverted evidence, even when viewed in the light most favorable to Plaintiff, does not show that Plaintiff was meeting the City's legitimate performance expectations. *See Toney v. Powercon Corp.*, No. SAG-19-0405, 2020 WL 758242, at *7 (D. Md. Feb. 14, 2020).

Second, Plaintiff has not shown that similarly situated employees outside of her protected class were treated differently. In her opposition, Plaintiff alleges that her more recent supervisors, Mr. McBride and Mr. Vaught, "favor[ed] her male colleagues over her." ECF 96 at 13. The only similarly situated comparator Plaintiff identifies is Mr. Kenneth Murithi, a male PM, who Plaintiff claims was treated "more favorably concerning terms and benefits of employment." ECF 96 at 9, 34; ECF 96-1 at 5. Even crediting Plaintiff's assertions, however, she fails to show that any of the allegedly disparate treatment or the ultimate adverse action, her termination, had anything to do with her gender. For instance, Plaintiff's assertion that Mr. Murithi was offered opportunities that Plaintiff was not offered, such as attending project management training and participating in a pilot project opportunity in another division, do not, on their own, show that Plaintiff was denied these

opportunities because of her gender or that denial of these opportunities led to Plaintiff's termination. ECF 96 at 34; ECF 96-2 at 5. Instead, the record shows that the training at issue was not required for Plaintiff's position, and that the City offered legitimate, non-discriminatory reasons for selecting Mr. Murithi for the pilot program, namely Mr. Murithi's lack of performance issues as compared to Plaintiff, who was on a PIP at the time. ECF 88-13 at 1-2; ECF 88-1 at 23; ECF 88-17, ECF 96-1 at 5.[3]

Even if Plaintiff could establish all elements of a prima facie case of gender discrimination, she has offered no evidence of pretext that would overcome the City's proffered legitimate, non-discriminatory reason for her termination: her poor work performance, as documented by three different supervisors during her tenure at BCIT. *See, e.g.*, *Williams v. Cerberonics*, 871 F.2d 452, 455-56 (4th Cir. 1989) (plaintiff's own assertions of discrimination were insufficient to counter employer's legitimate, nondiscriminatory reasons for discharge, including insubordinate attitude, difficulty working with fellow employees, tardiness in reporting for work); *Hawkins*, 200 F.3d at 281. Plaintiff's subjective belief that she received disparate treatment based on her gender and that her eventual termination was based on these factors is not supported by the record and cannot defeat the City's summary judgment motion as to this claim. Summary judgment for the City is warranted as to Count I.

---

[3] While Plaintiff contends that Mr. Murithi "had more work than Plaintiff," ECF 88-1 at 7, she admits that their work "was not technically the same." ECF 96-1 at 18-19. And even if Plaintiff raises a dispute of fact as to the relative workloads, she is still unable to offer evidence of pretext. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable ...").

### B. Disability Discrimination

In Count II, Plaintiff alleges that the City discriminated against her on the basis of her disability. ECF 50 at 9. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to …the hiring, advancement, or discharge of employees, …and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As with a Title VII discrimination claim, a plaintiff endeavoring to set forth a prima facie case of disability discrimination may point to direct evidence of discrimination or may use the *McDonnell Douglas* burden-shifting framework. *Neal v. East Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022). Using the *McDonnell Douglas* framework, a plaintiff must make out a *prima facie* case of discrimination. *Id*. If the plaintiff meets that initial threshold, the burden then shifts to the defendant to show that its adverse employment action was taken "for a legitimate, nondiscriminatory reason." *Id*. (citation omitted). The burden then returns to the plaintiff to show the employer's proffered reason was a pretext for discrimination. *Id*. Importantly, "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

To state a claim for disability discrimination under the ADA, the plaintiff must provide sufficient evidence to show that "(1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 175 (4th Cir. 2024) (citation and alterations omitted).

The parties dispute the first prong, whether Plaintiff produced sufficient evidence to establish she was disabled under the ADA. Plaintiff alleges two separate disabilities for which she

12

claims she suffered discrimination and failures to accommodate, "loss of range of motion and dexterity" in her hand and "generalized anxiety disorder." ECF 96 at 20.[4]

Under the ADA, a disability means:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment…

42 U.S.C. § 12102(1)(A)-(C).

Plaintiff claims that she offered medical evidence to show that her hand disability "affected her major life activities of working and performing manual tasks (typing and data entry) and

---

[4] In its reply brief, the City alleges that Plaintiff's disability discrimination claim based on her generalized anxiety disorder is barred because she failed to show exhaustion of administrative remedies by: 1) timely filing a discrimination charge as to this disability and, 2) that she received (or was entitled to receive) a right-to-sue letter from the EEOC. ECF 102 at 3. Under both Title VII and the ADA, a plaintiff must file an administrative charge alleging unlawful discrimination or retaliation prior to filing a lawsuit in state or federal court. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) ("[A] plaintiff in a civil action under Title VII must allege and prove filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue."). Plaintiff attached the charges of discrimination and retaliation on the basis of sex and disability (as to her hand only) and right-to-sue letters to the TAC. ECF 50-1, 50-2. In responding to the TAC, the City withdrew its "affirmative defense of Plaintiff's administrative exhaustion of various claims," ECF 51 at 2, which this Court noted in ruling on the City's motion to dismiss, ECF 56 at n.1. Plaintiff now argues that the City forfeited the right to raise an exhaustion defense as to her anxiety disorder. ECF 105-1 at 2. An employee is generally barred from filing suit under Title VII or the ADA if she fails to exhaust administrative remedies. *Campbell v. Becton, Dickson & Co.*, No. ELH-23-2272, 2024 WL 1299354, at *21 & n.12 (D. Md. Mar. 27, 2024) (also noting that administrative exhaustion "limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge"). However, in *Fort Bend Cty. v. Davis*, the Supreme Court held that administrative exhaustion is not jurisdictional, but is a "claim-processing rule[ ] that must be timely raised to come into play." 587 U.S. 541, 543-44 (2019). While it is clear from the record that Plaintiff did not exhaust administrative remedies as to her anxiety disability claim, the City has forfeited the right to raise this defense by asserting it for the first time in a reply brief on summary judgment after over two years of litigation. *See Campbell*, 2024 WL 1299354, at *21.

13

required two to three breaks during the workday." ECF 96 at 20-21; ECF 98-1 (sealed); ECF 98-2 (sealed). She alleges that she also offered sufficient evidence to show that her "generalized anxiety/chronic stress-related condition" substantially limited her ability to "focus, concentrate, make decisions, and work." ECF 96 at 21; ECF 98-3 (sealed) at 9. The City disagrees, arguing that Plaintiff never established that the accommodations needed for her hand were "indefinite" or that she was disabled by them, and that while it was aware of Plaintiff's claim for stress, the "alleged mental or emotional impairment" did not cause her to be "substantially limited in her ability to work." ECF 88-1 at 29-30.

While it is not clear that Plaintiff has established that she is substantially limited in her ability to work due to either of her alleged disabilities, because Plaintiff cannot otherwise meet the burden as to her prima facie case, the Court can assume without deciding that she could establish she was an individual with a disability under the ADA. *See Anderson*, 117 F.4th at 176-77. As this Court has determined with respect to her sex discrimination claim, Plaintiff is unable to show she was meeting the City's legitimate expectations at the time of her termination. Again, while the Plaintiff may disagree with the City's performance metrics or the "competence" or "credibility" of the supervisors who found her performance unsatisfactory, ECF 96 at 23-25, this Court will not "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298–99 (4th Cir. 1998) (quotations and citations omitted).

As this Court has determined, the City's proffered examples of Plaintiff's unacceptable job performance constitute a legitimate, non-retaliatory reason for termination of her employment, and Plaintiff cannot establish that the City's proffered reason was a pretext for discrimination.

Plaintiff also alleges that the City failed to accommodate both her hand and her generalized anxiety disabilities. To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must prove "(1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Cole v. Family Dollar Stores of Md., Inc.*, 811 F. App'x 168, 176 (4th Cir. 2020) (citation and alteration omitted). The same *McDonnell-Douglas* burden-shifting framework used to evaluate Plaintiff's discrimination and retaliation claims is used to analyze her proposed claim for failure to accommodate under the ADA. *Morgan v. Wells Fargo Bank, Nat. Ass'n*, 585 F. App'x 152, 153 (4th Cir. 2014).

Here, Plaintiff cannot establish a prima facie case of failure to accommodate. As to her hand disability, the record shows that the City agreed to make her requested accommodations, but that Plaintiff was not meeting performance expectations or performing essential functions of her job either before or after the accommodations. ECF 96-1 at 14-16 (noting Plaintiff had a backlog of uncompleted work even before she went on leave for hand surgery and could not complete assigned work even after her requested accommodations were approved); ECF 88-5; ECF 96-8 at 4 ("work was adjusted to accommodate her request" but "[e]ven with this accommodation…[it] continues to linger and run over"). *See Fields v. Lyng*, 705 F. Supp. 1134, 1136-37 (D. Md. 1988) (for the purposes of disability discrimination, a plaintiff must first show that she could "do [her] job *in spite of* [her] handicap," not that she could "do it *but for* [her] handicap" (emphasis in original)); *see also* 42 U.S.C.§ 12111(8), §12112(a). As to her anxiety disorder, the City presented uncontroverted evidence that Plaintiff's requested accommodations (to modify her work assignments, decrease her workload, and change supervisors) were not reasonable because they

15

would create "undue hardship" by impacting the workload of other PMs and requiring "a significant change in operational structure." ECF 88-15. *See Jasany v. U.S. Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985) ("The post office was not required to *accommodate* Jasany by *eliminating* one of the essential functions of his job." (emphasis in original)); *Autry v. Bowen*, 1987 WL 44787 at *2 (4th Cir. 1987) (finding that an employer is not required to accommodate a disabled employee by assigning his/her essential duties to other personnel such that it would impose undue hardship); *Fields*, 705. F. Supp. at 1137 (to fulfill its duty to reasonable accommodate an otherwise qualified employee's disability, employer did not have to transfer or reassign employee, create a new position, or restructure the position in a way that would impose undue hardship on the program and other employees). Plaintiff has not offered evidence to counter the hardship that would occur.

Even if Plaintiff could demonstrate a case of prima facie disability discrimination, this Court has determined that the City has provided evidence of non-discriminatory and legitimate reasons for Plaintiff's termination, and Plaintiff has failed to offer evidence of pretext. *Thomas v. City of Annapolis*, No. BPG-16-3823, 2018 WL 4206951, at *13 (D. Md. Sept. 4, 2018). As such, summary judgment is granted for the City on Count II.

### C. Retaliation

Plaintiff alleges retaliation in Count III of the TAC. ECF 50 at 9. Plaintiff has not alleged any facts to suggest direct evidence of retaliation, such as statements made regarding an intent to retaliate for the various complaints and charges she filed. ECF 96 at 29-33. Instead, Plaintiff alleges that the City's retaliatory intent can be inferred from its pattern of conduct in disciplining her, placing her on a PIP, and ultimately terminating her after she filed complaints about her supervisors, filed EEOC charges, and requested reasonable accommodation. *Id*. Accordingly, this

Court will consider Plaintiff's retaliation claim under the *McDonnell Douglas* framework. *Williams v. Cerberonics*, 871 F.2d 452, 457 (4th Cir. 1989). Under that framework, if a plaintiff establishes a prima facie case of retaliation, the defendant must present evidence a legitimate nonretaliatory/nondiscriminatory reason for its challenged action, which shifts the burden back to the plaintiff to show that the proffered reasons are pretextual. *Id*.

The *prima facie* case required to establish unlawful retaliation under Title VII includes evidence (1) that the plaintiff engaged in protected activity; (2) that she suffered an adverse employment action and (3) that there was a causal connection between the protected activity and the adverse action. *Id*.

Here, the City does not contest Plaintiff's ability to establish the first two elements but argues that Plaintiff cannot show a causal connection between the protected activity and her employment discipline or discharge, *i.e.*, that she was placed on PIPs due to the various "formal" complaints she filed and or that she was fired for requesting accommodation. ECF 50 at 6-8, ECF 102 at 8. While Plaintiff contends that she faced "retaliatory actions" for making sexual harassment claims against Mr. Carter and sexual discrimination claims against Mr. McBride, she provides no evidence that but for making these complaints, she would not have been disciplined. ECF 96 at 39-40. Instead, Plaintiff relies on conclusory allegations and hearsay to claim that Mr. Carter used Mr. McBride to retaliate against Plaintiff by "treating her as a problem employee and sabotaging her performance so she would lose her job," and Mr. McBride used Mr. Vaught to do the same. ECF 96 at 31-32. However, neither Mr. Carter nor Mr. McBride instituted the 2022 PIP against Plaintiff and neither effectuated her eventual termination. ECF 102 at 9-10. Instead, the record shows that Plaintiff's job performance issues predated her complaints and her EEO charges. ECF 88-3, ECF 88-7, ECF 96-10.

As discussed above, even if Plaintiff can establish a prima facie case of retaliation, she cannot rebut the substantial evidence of the City's articulated legitimate reason for her termination, her unsatisfactory job performance. Plaintiff alleges that the temporal proximity between her 2022 accommodation request and her discharge raises a genuine dispute of fact as to whether the City fired Plaintiff for making the request, ECF 96 at 32. While temporal proximity can be considered indirect proof of causation as to retaliation, Plaintiff offers no evidence to counter the City's documentation of her ongoing failure to meet job performance expectations. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (finding temporal proximity, and thus a causal nexus for retaliation, where employee was demoted six weeks after hearing on his EEO complaint but concluding nevertheless that "mere knowledge on the part of an employer that an employee... has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for adverse personnel action against that employee" (citation omitted)); *Williams*, 871 F.2d at 457 ("Plainly, mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee.") *Gladysiewski v. Allegheny Energy*, 39 F. App'x 721, 723-24 (3d Cir. 2010) (where plaintiff was on a PIP before he filed administrative complaints and a federal lawsuit and was ultimately terminated for failure to improve his work performance, retaliation claim failed because employer was "proceeding along lines previously contemplated" when it terminated him (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

While Plaintiff may disagree with the City's refusal of her accommodation requesting to be relieved of certain job responsibilities, she cannot establish that the City's proffered nondiscriminatory reason for her termination, her documented unsatisfactory performance, was a

18

pretext for retaliation. *See Carter*, 33 F.3d at 460 (where there was no evidence that nondiscriminatory reasons for demotion, failure to meet deadlines and unsatisfactory work performance, were pretextual, plaintiff failed to meet burden on retaliation claim). Thus, summary judgment on Count Three is also appropriate.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to file a surreply, ECF 105, will be GRANTED and the surreply at 105-1 should be docketed. The City's Motion for Summary Judgment, ECF 88, will be GRANTED, and this case will be closed. A separate Order follows.


Dated: November 6, 2024                                      /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge